IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROCHELLE FLYNN § | |
|     Plaintiff, § | |
| vs. § | |
| § | Civil Action No. 5:13-cv-0936 |
| DISTINCTIVE HOME CARE, INC. d/b/a § | |
| DISNTINCTIVE HEALTHCARE STAFFING, INC.; § | |
| AND § | |
| SPECTRUM HEALTHCARE RESOURCES, INC § | |
|     Defendants. § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

This is an action under the Rehabilitation Act of 1973, to correct unlawful employment practices, i.e., discrimination on the basis of Plaintiff's disability, and to provide appropriate relief to Rochelle Flynn who was adversely affected by such practices.  Rochelle Flynn was subjected to unlawful discrimination when her contract as a pediatrician with Defendants DISTINCTIVE HOME CARE, INC. d/b/a Distinctive Healthcare, ("Distinctive"), and Spectrum Healthcare Resources, Inc. ("Spectrum"), was terminated in violation of federal law.

This action is also brought against Defendants Distinctive and Spectrum to redress pendant state law claims by Plaintiff that arose from the unlawful actions of Distinctive and Spectrum.  Specifically, Plaintiff alleges that Distinctive and Spectrum breached their contract with Plaintiff.

**JURISDICTION AND VENUE**

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to 29 U.S.C. §794.  This Court has jurisdiction over pendant state claims that arise from the same set of facts that underlie the claims under federal law.

2. The discriminatory practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

## PARTIES/SERVICE OF PROCESS

3. Plaintiff, ROCHELLE FLYNN is a resident of San Antonio, Bexar County, Texas. At all times material to this cause of action, DR. FLYNN was an Independent Contractor Pediatrician d/b/a Skwids and Skwiggles Pediatrics, PLLC with Distinctive and Spectrum.

4. Defendant DISTINCTIVE HOME CARE, INC. d/b/a DISTINCTIVE HEALTHCARE STAFFING, INC., is a foreign corporation registered to do business in the State of Texas, has continuously been doing business in the State of Texas in the city of San Antonio, Texas. Defendant may be served with citation by serving its registered agent of service; CSC—Lawyers Incorporating Service Company, 211 7th Street, Suite 620, Austin, Texas, 78701-3218.

5. Defendant SPECTRUM HEALTHCARE RESOURCES, INC, is a foreign corporation registered to do business in the State of Texas, has continuously been doing business in the State of Texas in the city of San Antonio, Texas. Defendant may be served with citation by serving its registered agent of service; CSC—Lawyers Incorporating Service Company, 211 7th Street, Suite 620, Austin, Texas, 78701-3218.

## STATEMENT OF FACTS AND CLAIMS

6. Plaintiff Rochelle Flynn, is a contract pediatrician who suffers from Asperger's Syndrome, a condition on the "high" end of the Autism Spectrum. Asperger's Syndrome involves the lack of understanding of social cues, especially nonverbal forms of communication. Asperger's is normally diagnosed in children and young adults; however, when it is diagnosed in older adults, the symptoms may be more severe. While this is a lifelong condition and cannot be "cured," coping strategies and social skills training and coaching are a major part of therapies

employed with young children who were diagnosed early. Obviously, these skills are more successful if started early in childhood and become more difficult to develop when started in adulthood. It is not an "easy fix" and, even with young children, more socially-acceptable behaviors and communication skills still take years to improve. Asperger's Syndrome, (now classified as Autism Spectrum Disorder, Level 1 mild, by the new DSM-V criteria), is considered a disability under the Rehabilitation Act of 1973 and the Americans with Disabilities Act and the 2008 ADA Amendments.

Initially, Dr. Flynn was employed through Spectrum as an independent contractor/pediatrician physician at Wilford Hall Medical Center located at Joint Base San Antonio Lackland, AFB. In April 2013 Dr. Flynn signed a new Independent Contractor Agreement with Distinctive, although Spectrum still retained some connection with Distinctive as the two companies transitioned through their contracts with the Air Force. Spectrum still continued to exercise control over the employment of independent contractors such as Plaintiff.

On Wednesday, May 15, 2013, Dr. Nancy Ratliff, Dr. Flynn's psychologist, officially diagnosed Dr. Flynn with Asperger's Syndrome. On May 16, 2013, Dr. Richard Takao, a medical director for Spectrum, informed Dr. Flynn that there had been complaints about her and there was "dissatisfaction" with her performance at Wilford Hall. Many of the complaints concerned Dr. Flynn's interaction with coworkers and with the parents of her pediatric patients (including comments made to the patients that were perceived as "inappropriate" by the parent).

In fact, the Plaintiff did not hear anything further from Dr. Takao until the May 16th phone call. At this time, she informed him that she had just been diagnosed with Asperger's Syndrome the day before, which would explain many of the issues that were of concern to Defendants Distinctive/Spectrum. Dr. Takao told Plaintiff that her information "completely changed" his "perspective" and it was "no longer cut and dried" and he would "have to discuss it

further with Dr. Stangle" and others when he returned from his vacation that was scheduled for the following week.  On Thursday, May 30, 2013, at 8 pm, Dr. Takao informed Plaintiff that her "contract was to be terminated" because "they" had "met and decided to take this action effective immediately."  Dr. Takao told Plaintiff she was being given "a really good opportunity to resign voluntarily."  Early the following morning, Friday, May 31, Plaintiff sent an email requesting an extension to this "offer" until the end of the day, Monday, June 3, 2013, in order to have adequate time to consider her decision.  Initially Dr. Takao informed the Plaintiff that her request had been granted (implying that the decision was made by people in higher levels of administration at Distinctive and Spectrum).  In the same voice message, then again in more detail in a phone discussion around noon that day (May 31), Dr. Takao also informed Plaintiff that "they had decided" that she was not allowed to return to the clinic that day to clear out her personal belongings and say goodbye to her staff.  When the Plaintiff mentioned that the now-combined Pediatric-OB-GYN Clinic Flight commander Major Shannan McCann volunteered to escort her while she did this, he was adamant that "they decided that you are not to go into the clinic under any circumstances."  Dr. Flynn was very upset and confused by this, so she suggested the next logical approach, that she would contact the Base Police to escort her into the clinic to pack up her office belongings and say her goodbyes to her personal tech and her team nurse and several others.  Dr. Takao again adamantly stated that "they made it very clear that you are not allowed to return there under any circumstances."  With the rejection of even the most logical choice of having Base Police provide the escort and supervision, which would essentially remove any perceived threat of creating a disturbance in the clinic and allow the Plaintiff the dignity of removing her own personal belongings, the Plaintiff tried to gain understanding from Dr. Takao about why she was "being treated like a criminal."  Dr. Takao provided no explanation for this action, citing "I don't know what to tell you."  Dr. Takao was also very

insistent about clearing the Plaintiff's office himself.  Dr. Flynn tried to get him to back down from this (she felt she was being pressured into this against her wishes) by informing him that Dr. Shannan McCann had agreed to do this as a surrogate for Dr. Flynn herself.  Unfortunately, Major McCann was in a meeting and Dr. Takao got to the clinic first, and took this job on himself against Dr. Flynn's wishes and ineffective protests to the contrary.  To add even more insult to this situation, around 3 pm that afternoon (Friday, May 31), Dr. Takao also informed Plaintiff that "they" had "changed their mind" and that Plaintiff's letter of resignation was "now due by the end of business today or else it is no longer part of the deal."  Dr. Takao provided no explanation for this abrupt change from the earlier agreement.  In fact, he was very cavalier about the entire situation and despite Dr. Flynn's numerous inquiries to him trying to process and understand all of the events that were occurring in less than 24 hours, he just replied with what was becoming his mantra, "I don't know what to tell you".

     Plaintiff sent an email to Dr. Takao and Bill Childress, the regional manager for Spectrum, again explaining that she suffered from Asperger's Syndrome and requested a meeting to discuss modifications for her continued employment.  The meeting was granted in the form of a 20-minute telephone conference on Friday, June 7, in which Plaintiff and her psychologist, Dr. Ratliff, met telephonically with Dr. Takao and Mr. Childress from Spectrum, and Jim (last name unknown) at Distinctive.  Dr. Ratliff and Plaintiff presented myriad ways that Plaintiff's efficiency and social interactions could be improved by modifications that would not require any major changes, expenses, or additional staffing to either the Air Force or to the contracting companies  and would be reasonable accommodations for the Plaintiff's medical condition.  Plaintiff also discussed many positive aspects of Asperger's that are assets to make her a very good pediatrician.  The conversation ended abruptly without any comments made by any of the Defendants, and Mr. Childress told Plaintiff, "we'll be in touch" but would not provide any

specifics as to an expected amount of time. On Monday, June 17, when Plaintiff contacted Mr. Childress, he stated that "we are currently working with the facility regarding this" and again, basically, "we'll be in touch."

On June 23, 2013, Plaintiff sent a letter about her status and suggested a buyout of the rest of her 10-month contract as a resolution. Defendant Distinctive did not respond to her letter. On June 28, 2013, Mr. Childress sent an email to Plaintiff stating that the Air Force would not agree to any "modifications" and that her contract was effectively terminated.

In addition to the breach of contract and discrimination based on her Asperger's Syndrome, Dr. Flynn had been singled out by harassing and demeaning comments and actions made by clinic director, Dr. Jennifer Stangle (USAF). When Dr. Flynn discussed her concerns about Dr. Stangle in several detailed emails sent to Spectrum and a phone discussion with Dr. Takao in mid-March, no changes were ever made, no meetings to mediate differences and "clear the air" were ever discussed or suggested by the "physician's representative" for Spectrum, Dr. Takao.

Dr. Stangle's harassment of Dr. Flynn created a very hostile work place for Dr. Flynn and were done with clear malicious intent. At no time did the Plaintiff witness this same type of behavior directed towards any other provider or staff member. Any concerns about colleagues or suggestions for relevant pediatric topics for discussion during lunchtime provider meetings were also completely ignored by Dr. Stangle without explanation.

Plaintiff's suggestions were not only to benefit the Plaintiff herself, but were about global clinic issues with far-reaching implications. During one lunchtime weekly provider meeting where the topic of charting was being discussed, Plaintiff voiced her concerns about information that was constantly missing from the most recent note in patient medical records because it was not being updated correctly with information that was present in long-past notes but had never

been "copy-forwarded" (a responsibility of the medical techs, but one "just not done" by the majority, despite a feature of the military Electronic Medical Record specifically designed for this). Dr. Flynn emphasized that she had purposely gathered a much more thorough past history from her assigned patients that she was meeting for the first time, with the express purpose of having this information readily available at subsequent visits, thereby proactively anticipating much more efficient patient encounters.  However, rather than Dr. Stangle responding with appreciation that this matter was brought to her attention as the Clinic Medical Director, so she could address it properly and correct it for the future, she dismissed this concern and essentially condoned this lack of thoroughness in job performance by focusing the issue solely back on Dr. Flynn.  Dr. Stangle responded to Dr. Flynn's concerns by telling her, "Who cares about family history when a patient is there for an ear ache?  You are the provider, so it is your responsibility to check the chart before you sign it."  Again, Dr. Flynn tried to explain that she had already included a lot of information in previous notes that should have been copied into the current note by the techs as part of their stated job duties, but again Dr. Stangle told her that "it is your responsibility as the provider."  This blatant dismissal of the Plaintiff's concerns was clearly done with malicious intent with the result of singling out Dr. Flynn in front of all of her physician colleagues causing humiliation.

     Dr. Flynn brought up this issue to increase efficiency and reduce the time-consuming chart completion process for the entire clinic; and to increase overall clinic function and patient medical record thoroughness.  Dr. Flynn never received any acknowledgement for her hard work to go the extra distance for any of her patients or for her attention to detail and meticulous documentation in all of her medical records.  In fact, one of the "complaints" ultimately used against her later was that she was "taking too long to complete her chart notes."  A by-product of Plaintiff's Asperger's.

This was clearly malicious and targeting Dr. Flynn specifically, since at least one of her colleagues, also an Independent Contractor with Spectrum/Distinctive, was frequently behind in her charting documentation by dozens of charts at a time, and well beyond the required 72-hour completion period.  This other pediatrician, however, is still currently working at the clinic, and her contributions to all meetings were always gladly welcomed and encouraged.

Plaintiff complains that Defendants Distinctive and Spectrum violated the Rehabilitation Act of 1973 when they terminated her contract after they found out she had been diagnosed with Asperger's Syndrome.  Finally, Plaintiff complains Defendants did not give her proper notice of the termination of her contract and there was no just cause for the termination of her contract.

7.    The unlawful employment practices complained of in paragraph six were and are intentional.

8.    The unlawful employment practices complained of in paragraph six above were and are being done with malice or reckless indifference to the federally protected rights of Rochelle Flynn.

## PENDANT STATE LAW CLAIMS

### BREACH OF CONTRACT

9.    Defendants' conduct as described above amounts to a breach of contract.  Plaintiff entered into an employment agreement with Defendants Distinctive and Spectrum.  The agreement included a clause which stated, "Company will not control or have the right to exercise control over the manner or means in which Contractor or Physician performs the services."  In addition, the contract did not provide a provision for terminating the services of Plaintiff under the terms her contract was terminated.  Finally, the contract specified the method for communicating the termination, by certified mail, and Plaintiff's contract was not terminated

in the specified manner. In fact, Defendants' actions throughout the entire process were in violation of the contract.

## DAMAGES

There are actual damages due to breach of contract. Defendants owe Plaintiff for the ten months remaining on the contract at $6,850 per month for a total in actual damages of $68,500.00. Additional damages are described below.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A. Order the Defendants, Distinctive and Spectrum, to make whole Rochelle Flynn, by providing appropriate compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs six through eight above, in amounts to be determined at trial;

B. Order the Defendants, Distinctive and Spectrum, to make whole Rochelle Flynn, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph seven above, including, but not limited to, emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

C. Order the Defendants, Distinctive and Spectrum, to pay Rochelle Flynn punitive damages for its malicious and reckless conduct described in paragraphs six through eight, in amounts to be determined at trial;

D. Order the Defendants, Distinctive and Spectrum, to make whole Rochelle Flynn, by providing compensation for damages incurred through its breach of the Independent Contractor Agreement as described in paragraphs six through eight, in amounts to be determined at trial;

E. Grant such further relief as the Court deems necessary and proper; and

F.	Award the Plaintiff her costs and attorneys' fees in this action.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by her Complaint.

>	Respectfully submitted,
>
>	FORTÉ & PITTARD, P.L.L.C.
>	1777 NE Loop 410, Suite 600
>	San Antonio, Texas 78217
>	Telephone: (210) 678-3075
>	Telecopier: (210) 820-2609
>
>	By:	/s/ R. Chris Pittard
>		R. CHRIS PITTARD
>		State Bar No. 00794465
>
>		ATTORNEYS FOR PLAINTIFF
>		ROCHELLE FLYNN

**EXHIBIT "A"**

**CONSULTANT SETTLEMENT AGREEMENT**