## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROCHELLE FLYNN | § | |
| | § | |
| VS. | § | |
| | § | |
| DISTINCTIVE HOME CARE, INC. D/B/A | § | Civil Action No. 5:13-cv-0936a-FB |
| DISTINCTIVE HEALTHCARE | § | |
| STAFFING, INC.; AND SPECTRUM | § | |
| HEALTHCARE RESOURCES, INC. | § | |

## DEFENDANT SPECTRUM HEALTHCARE RESOURCES, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Defendant Spectrum Healthcare Resources, Inc. ("Spectrum") files its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and in the alternative, Motion for Summary Judgment, and would respectfully show the Court as follows:

**I.**

### RULE 12(b)(6) MOTION TO DISMISS

1.      Spectrum moves under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Rochelle Flynn's claims for failure to state a claim for which relief can be granted, and would show as follows:

**A.      Background**

2.      On January 9, 2014, Plaintiff filed her First Amended Complaint against Spectrum alleging (1) discrimination on the basis of Plaintiff's disability in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), and (2) breach of contract. Plaintiff seeks actual damages of $68,500.00, compensation for past and future pecuniary losses, emotional pain, suffering, loss of enjoyment of life, humiliation, punitive

damages for malicious and reckless conduct, attorney's fees and costs. (Doc. 4, Pl.'s First Am. Compl.)

3.    Spectrum entered into an Independent Contractor Agreement with Plaintiff on or about August 17, 2012 (the "Spectrum ICA"). (App. 001-007.) Plaintiff subsequently assigned the Spectrum ICA to Skwids and Skwiggles Pediatrics, PLLC ("Skwids"), a professional limited liability company of which Plaintiff was President. (App. 008-009.) Under the Spectrum ICA, Plaintiff provided services to Wilford Hall Medical Center ("Wilford Hall") at Lackland Air Force Base ("Lackland AFB") in San Antonio, Texas as a contract pediatrician. The Spectrum ICA terminated on March 30, 2013, when Spectrum's contract with the government terminated. (App. 002 at ¶8.3, 010-011.)

4.    Thereafter, Defendant Distinctive Homecare, Inc. ("Distinctive") entered into an Independent Contractor Agreement with Skwids for the period beginning April 1, 2013, under which Dr. Flynn continued to provide services to Wilford Hall as a contract pediatrician. (App. 012-019.) Via a separate Agreement for Administrative Services effective April 1, 2013, Spectrum agreed to provide administrative services to Distinctive in connection with Distinctive's provision of pediatric services to Lackland AFB. (App. 020-026.) Dr. Richard Takao, an employee of Spectrum, served as Distinctive's liaison with Dr. Flynn and Lackland AFB.

5.    On May 16, 2013, Dr. Takao informed Dr. Flynn that Distinctive had received several complaints regarding her work performance at Wilford Hall, and that Lackland AFB had requested that she be immediately replaced due to serious patient

-2-

complaints and staff concerns. It was during this teleconference that Plaintiff first informed Dr. Takao of her Asperger's diagnosis.

6.      In a Memorandum For Record dated May 17, 2013 (the "Memorandum"), Jennifer A. Stangle, Maj., MC, MD, the Pediatric Clinic Medical Director for Wilford Hall, noted that there had been several patient complaints received regarding services provided by Dr. Flynn. (App. 029.) Dr. Stangle also attached supporting documentation to the Memorandum detailing concerns about Dr. Flynn's work performance. Dr. Stangle specifically pointed to an incident which had resulted in a mother dis-enrolling her child from the facility following an interaction with Dr. Flynn. The mother stated on a comment card dated April 22, 2013 that "Dr. Flynn would not listen, she talked over me, would not look at me when I spoke…she made me feel like I was ignorant…" (App. 030.)

7.      On April 16, 2013, Wilford Hall received a patient complaint regarding Dr. Flynn's inappropriate behavior and poor judgment. Captain Randy A. Sanford reported to Clinic Director Stangle that a twelve-year-old boy had come into the clinic for a routine physical; during the examination, Dr. Flynn had gone into graphic detail about sexually transmitted diseases, rape, date rape drugs and drinking, in a manner inappropriate for his age. (App. 037.) The patient's mother reported that at the beginning of the visit she had asked Dr. Flynn to examine and treat a sty on the child's lower eye lid and refill the child's attention deficit and hyperactivity disorder medication; Dr. Flynn had completely failed to address these requests during the visit. (*Id.*)

8.      On May 16, 2013, the clinic documented another patient complaint regarding Dr. Flynn's services. (App. 037-038.) The complaint, submitted by a mother of one of Dr. Flynn's eleven-month-old patients, documented that Dr. Flynn had

consistently expressed disgust regarding the mother's parenting decisions, including breastfeeding and the use of cloth diapers, and had inappropriately stated to the mother that her eleven-month-old daughter needed to keep her legs closed when another little boy of the same age interacted with the daughter. (*Id.*) The mother additionally reported that Dr. Flynn had ordered lab tests for her daughter three times but had been unable to interpret the results to the mother; she also had made an error on a prescription –writing 600mg of iron as opposed to the 60 mg she had indicated to the mother would be prescribed. (*Id.*) The mother ultimately submitted a request for a change of physician as she was unhappy with the services provided by Dr. Flynn. (*Id.*)

9.     Dr. Stangle's Memorandum further noted ongoing problems with Dr. Flynn not being able to arrive to work on time or complete her records within the duty day. (App. 029.) Dr. Flynn's clinic technician provided a supporting statement on May 16, 2013, indicating he had observed Dr. Flynn being forgetful, curt, depressed, frustrated and inconsistent in reactions to normal stressors of the day, often becoming tearful and even on one occasion stating that she just needed a gun. (App. 032.) Dr. Flynn hardly ever arrived to work on time even when she had scheduled patients and often had to stay late into the evening to complete the day's tasks. (*Id.*)

10.     On May 8, 2013, Dr. Flynn submitted a request to have her schedule frozen and no additional patient visits added, noting that she had been "constantly behind in charts…desperate to catch up…having a lot of difficulty [and] feeling very overwhelmed…." (App. 036.) She also sent an email to Major Shannan McCann, stating that she remained behind on her job duties including charting patient records. (App. 041.) As a result of her inability to stay on top of her charting as required for the

-4-

position, or to otherwise fulfil her job duties, the clinic was forced to have two people cover Dr. Flynn's position. (App. 029.)

11.    Dr. Flynn also experienced problems and conflict interacting with co-workers and clinic staff. On one occasion, she fired off an accusatory email claiming a patient's medical records had been erroneously attached to a daycare physical form in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). (App. 040.) It was determined that the records had been attached solely for Dr. Flynn's convenience to assist her in completing the daycare physical form accurately. (*Id.*) As a result of this incident, Dr. Flynn was advised to "go directly to the person first...to understand the situation prior to sending out a finger-pointing email." (App. 039.)

12.    On May 21, 2013, Dr. Flynn was reprimanded for reporting a mother to Child Protective Services ("CPS") despite her knowledge that the mother had full support from her own family and her in-laws, was well-organized and tied to the local community, and there was no evidence of abuse or neglect of the patient. (App. 045.) Dr. James Phalen admonished Dr. Flynn to seek the counsel of her peers when appropriate before making an unwarranted and potentially harmful report to CPS. (*Id.*)

13.    On May 22, 2013, Dr. Flynn wrote to Dr. Phalen seeking advice regarding the treatment of a patient and provided a brief description of the issues and what actions had been taken regarding treatment, including a change in medications and an increase in dosage. (App. 044.) Dr. Phalen responded, indicating it is generally not recommended that atypical antipsychotic medication be initiated or changed in children diagnosed with autism spectrum disorder, such as Dr. Flynn's patient, without first consulting developmental pediatrics or child psychiatry. (*Id.*) The advice provided by Dr.

Phalen appears to be common knowledge and practice in the pediatric field of medicine of which Dr. Flynn should have been aware.

14.     On May 16, 2013, Dr. Takao communicated to Plaintiff the government's request that Plaintiff be replaced due to patient complaints and staff concerns. During the conference, Dr. Flynn advised Dr. Takao that she had been diagnosed with Asperger's Syndrome. This was the first time Plaintiff notified Dr. Takao (and Spectrum) of her diagnosis. Spectrum had no knowledge of Plaintiff's alleged disability prior to the May 16, 2013 phone call, the purpose of which was to notify Plaintiff of her termination. Although Plaintiff requested a meeting to discuss modifications to her job as a result of the Asperger's Syndrome diagnosis, the Air Force declined to accommodate Plaintiff's requested modifications. Lackland AFB's request for Dr. Flynn's removal was confirmed in writing via an email dated May 30, 2013, which included supporting statements and emails. (App. 028.)

**B.**     **Standard of Review on Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) permits the dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether a plaintiff's complaint fails to state a claim upon which relief can be granted, the court must accept as true all factual allegations; legal conclusions and conclusory statements do not suffice. *Id.*

1858163.5/SPH/32574/0101/103114

C.    **Plaintiff Fails to State a Federal Discrimination Claim upon Which Relief May Be Granted**

15.    Plaintiff alleges a violation of the Rehabilitation Act. (Doc. 4 at p.8, ¶6.) She asserts she suffers from Asperger's Syndrome and conclusorily states Spectrum terminated her after finding out she had been diagnosed with Asperger's Syndrome. (*Id.*) However, she admits Dr. Takao, acting on behalf of Distinctive, contacted her on May 16, 2013, *prior* to learning of her Asperger's diagnosis, to inform her there had been several complaints about her work performance at the facility and that as a result, the government had requested that Distinctive remove her from the schedule and that she no longer provide services at the facility. (*Id.* at p.3, ¶6; *see* App. 027-028.) Plaintiff fails to offer any specific dates, specific events, or any specific comments made by or on behalf of Spectrum that pertain to the discrimination claim alleged by her; Plaintiff provides only the broadest generalities and conclusions which logically do not add up given the timeline of events.

16.    Plaintiff also alleges Spectrum's conduct amounts to a breach of contract. (Doc. 4 at p.8, ¶9.) However, Plaintiff admits at the time of her termination, she was not a party to an agreement with Spectrum, as the Spectrum ICA had previously terminated on March 30, 2013 when Spectrum's contract with the government ended (*see* App. 010); rather, at the time of her dismissal from Wilford Hall, she (through Skwids) was a party to an agreement with Distinctive. (Doc. 4 at p.3, ¶6; App. 012-109.) Spectrum cannot be said to have breached an agreement that did not exist.

17.    Plaintiff alleges the contract did not provide a provision for terminating her services for the reasons given by the government. (*Id.* at p.8, ¶9.) Notably, however, the Distinctive ICA provided that Distinctive would have the right to *immediately* terminate

the ICA upon receipt of a request that Plaintiff be removed from the schedule or not provide services at the government facility. (App. 013 at ¶9.2.) Here, that is precisely what occurred, as the government made a decision that it no longer wished for her to provide services at the facility. (App. 028.)

18.     As the Fifth Circuit has instructed, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). To prevail on a discrimination claim under the Rehabilitation Act, Plaintiff must show she suffered an adverse employment action *solely* because of her disability. *See* 29 U.S.C. §794; *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. Tex. 1998). To establish a *prima facie* case of illegal employment discrimination under the Rehabilitation Act, Plaintiff is required to establish a causal connection between her condition and the alleged misconduct undertaken by her employer. *Sherrod v. Am. Airlines, Inc.*, 132, F.3d 1112, 1122 (5th Cir. 1998).  Here, Plaintiff cannot establish an employment relationship with Spectrum at the time in question, much less provide any specific facts regarding how Spectrum discriminated against her based on her disability. Plaintiff fails to even provide facts to establish that Spectrum was <u>aware</u> of her disability prior to her termination by the government. Merely alleging that Plaintiff was a member of a protected class and was discriminated against by being terminated does not give rise to a right to relief above the speculative level. Accordingly, Plaintiff has failed to state a viable federal discrimination claim and dismissal is warranted under Rule 12(b)(6).

-8-

**D.**   **Plaintiff Fails to Plead a State Law Claim upon Which Relief May Be Granted**

19.   Plaintiff's state law claim against Spectrum for breach of contract should also be barred under Texas law. Plaintiff fails to provide any specific factual basis to establish the contract that underlies her claim for breach of contract. Her pleadings are insufficient under *Iqbal* and *Twombly*.

20.   To prevail on a breach of contract claim, Plaintiff must prove a valid contract existed between the Plaintiff and Spectrum. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.-Houston [14th Dist.] 2008, no pet.). Here, Plaintiff cannot establish that there existed a valid and enforceable contract between herself and Spectrum at the time about which she complains. Spectrum's contract with Plaintiff terminated on March 30, 2013, prior to the events complained of in this lawsuit. (App. 010.) For this reason alone, her breach of contract claim should be dismissed.

21.   Further, Plaintiff incorrectly states her contract did not provide a provision for terminating her services on the basis for which she was terminated. (Doc. 4 at p.8, ¶9.) Plaintiff's services were terminated by Spectrum pursuant to Paragraph 8.3 of the Spectrum ICA, effective March 30, 2013. (App. 002.); her subsequent contract was with Distinctive, not Spectrum. (*See* App. 012-019.) Accordingly, Plaintiff has failed to state a viable breach of contract claim as to Spectrum, and dismissal is warranted under Rule 12(b)(6).

II.

**MOTION FOR SUMMARY JUDGMENT**

22.   In the alternative, Spectrum contends that Plaintiff's claims do not amount to violation of the Rehabilitation Act and therefore Spectrum is entitled to summary

-9-

judgment on this issue. Additionally, Plaintiff did not have a contract with Spectrum at the time of her termination; thus, Spectrum is entitled to summary judgment on Plaintiff's breach of contract claim as well. In support of this Motion for Summary Judgment, Spectrum specifically relies on the live pleadings on file and the summary judgment evidence contained in the exhibits referenced above (contained in the Appendix filed in connection herewith), as authorized by Rule 56 of the Federal Rules of Civil Procedure.

**A.      Standard of Review on Motion for Summary Judgment**

23.      Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there are no genuine issues about any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). If the burden of proof at trial lies with the non-moving party, the movant must satisfy its initial burden by showing that there is no evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. While the moving party must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the non-movant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

24.      If the moving party makes a showing that there is no evidence to support the non-moving party's case, the non-movant must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Inc. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-moving party must present specific facts which show

-10-

the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003), citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

25.     In the employment discrimination context, the court must focus on whether a genuine issue exists about whether the defendant intentionally discriminated against the plaintiff. *Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996). To defeat a motion for summary judgment, the non-moving party must present evidence, not just conjecture and speculation, that the defendant discriminated against the plaintiff. *Id.* at 140. The employee's subjective belief that the challenged actions were discriminatory is not sufficient to survive a judgment on the pleadings when the employer articulates an adequate non-discriminatory reason for the discharge. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993). In this case, Spectrum is entitled to summary judgment because Plaintiff has not presented any evidence other than her subjective belief to establish the elements of a *prima facie* case of discrimination under the Rehabilitation Act. Spectrum has articulated a legitimate, non-discriminatory reason for Plaintiff's discharge while Plaintiff's case rests solely on her own subjective belief that she was discriminated against and Plaintiff cannot come forward with any evidence that the reason is merely pretext. Further, Spectrum is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not presented any evidence to establish the existence of a valid and enforceable contract between her and Spectrum for the relevant time period.

-11-

B.     **Argument and Authority**

*Plaintiff Cannot Set Forth a Prima Facie Case of Disability Discrimination Under the Rehabilitation Act.*

26.     Plaintiff asserts a claim under the Rehabilitation Act for discrimination on the basis of a disability. (Doc. 4 at p.8, ¶6.) The Rehabilitation Act prohibits discrimination against qualified individuals with disabilities on the basis of their disabling conditions. 29 U.S.C. § 794. Its purpose is to assure that disabled individuals receive the same treatment as their able-bodied peers. *Chiari v. City of League City*, 920 F.3d 311, 315 (5th Cir. 1991); *see also Traynor v. Turnage*, 485 U.S. 535, 548, 99 L. Ed. 2d 618, 108 S. Ct. 1372 (1988). The Act also imposes the affirmative duty to provide reasonable accommodation to qualified individuals with disabilities. *Prewitt v. U.S. Postal Service*, 662 F.2d 292 (5th Cir. 1981).

27.     To qualify for relief under the Rehabilitation Act, Plaintiff must show that: (1) Asperger's Syndrome is considered a disability as that term is defined in 29 U.S.C. 705(9); (2) she is otherwise qualified to perform the duties of a contract pediatrician for Wilford Hall; (3) she worked for a program or activity that received federal financial assistance; and (4) she was adversely treated solely as a result of her disability. *See Chiari,* 920 F.2d. at 315.

28.     Plaintiff can arguably establish the first three elements of her *prima facie* case; Plaintiff cannot, however, establish the fourth element. The Rehabilitation Act requires that the adverse employment action be taken <u>solely</u> because of Plaintiff's disability. *See* 29 U.S.C. §794; *see also Hamilton,* 136 F.3d at 1050. To establish a *prima facie* case of illegal employment discrimination under the Rehabilitation Act, Plaintiff must establish a causal connection between her condition and the alleged

-12-

misconduct undertaken by her employer. *Sherrod*, 132, F.3d at 1122. Here, Plaintiff cannot establish a *prima facie* case under the Rehabilitation Act as she cannot come forward with evidence that her alleged disability was the sole reason for her termination; even if Plaintiff can establish a *prima facie* case, Spectrum has presented evidence of a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff cannot establish pretext.

29.    Plaintiff has alleged she was terminated in violation of the Rehabilitation Act and that she was not provided proper notice of her termination. (Doc. 4 at p. 8, ¶ 6.) However, Spectrum has offered evidence indicating that it provided proper notice of the termination of the Spectrum ICA (App. 010-011), and at the time Dr. Takao communicated to Plaintiff that the government had requested of Distinctive that she no longer provide services, he was not even aware of Plaintiff's Asperger's diagnosis. Further, Spectrum has presented evidence that the latter decision to terminate Plaintiff's employment was made independently by the government. (*See* App. 027-029.)

30.    The evidence shows legitimate, non-discriminatory reasons for Plaintiff's termination – (1) Spectrum's contract with the government had ended, resulting in the termination of the Spectrum ICA (App. 010), and (2) under the Distinctive ICA, Plaintiff performed poorly as a contact pediatrician at Wilford Hall, elicited several complaints from patients and their families, did not get along well with other staff members and was consistently behind on charting deadlines. (App. 029-045.) As a result, Spectrum has rebutted any *prima facie* showing of adverse employment action based on discrimination and the burden rests with Plaintiff to either directly or indirectly establish pretext on the part of Spectrum. *Burdine*, 450 U.S. at 256.

31.     Mere assertions of factual dispute unsupported by probative evidence will not prevent a summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Plaintiff is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. La. 1998). Plaintiff has made meritless assertions of adverse treatment but has not offered any probative evidence supporting such claims. She simply states as a conclusion that she was unlawfully terminated due to her disability. Spectrum has met its burden of production and Plaintiff has failed to establish any evidence that would support an allegation of pretext on Spectrum's part. Thus, Plaintiff has failed to establish that she was adversely treated solely as a result of her disability and cannot satisfy the fourth element of a Rehabilitation Act claim.

### Plaintiff Cannot Set Forth A Prima Facie Case That Her Employer Created a Hostile Work Environment Due to Her Disability.

32.     Plaintiff alleges that the government subjected her to a hostile work environment based on her disability. Specifically, Plaintiff claims that Dr. Stangle singled her out with harassing and demeaning comments and actions. (Doc. 4 at p.6, ¶6.) In *Flowers v. S. Reg'l Physician Servs., Inc.*, the Fifth Circuit recognized a right to a disabilities-based hostile work environment claim under the Rehabilitation Act. 247 F.3d 229, 232 (5th Cir. 2001). To establish a *prima facie* case of disability-based harassment, Plaintiff must prove that (1) she belonged to a protected group (i.e., that she is disabled under the ADA); (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based solely on her disability or disabilities; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt,

-14-

remedial action. *Flowers*, 247 F.3d at 235. Moreover, the disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998).

33.    Plaintiff must provide evidence that she was subjected to unwelcome harassment and that the harassment complained of was based solely on her disability in order to satisfy the second and third elements of a hostile environment claim. *Flowers*, 247 F.3d at 235. A hostile environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether a workplace environment is abusive the Court must consider the entirety of the evidence including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Flowers*, 247 F.3d at 236 (quoting *Shepard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir.1999)). To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris*, 510 U.S. at 21-22.

34.    Plaintiff alleges a hostile work environment by stating "Any [of my] concerns about colleagues or suggestions for relevant pediatric topics for discussion during lunchtime provider meetings were also completely ignored by Dr. Stangle without explanation." (Doc. 4 at p.6, ¶6.) Plaintiff does not provide any specific dates on which

-15-

such alleged conduct occurred, nor does she indicate with specificity what statement she considered harassing or demeaning.

35.    Plaintiff also alleges that on one occasion when she made a suggestion regarding how to organize notes in a patient's chart Dr. Stangle responded by indicating that as the provider Plaintiff was ultimately responsible for checking the patient's chart before signing it. (*Id.*) While Plaintiff offers such example as evidence of harassment and a hostile work environment, Dr. Stangle's comment does not rise to the level of discriminatory harassment. Further, Spectrum was not even aware of Plaintiff's Asperger's diagnosis until May 16, 2013 and Dr. Stangle was never made aware of it while Plaintiff was working for Wilford Hall.

36.    Plaintiff never alleges that any discriminatory remarks were made pertaining to her disability. As a result, Plaintiff has failed to establish that she was subject to unwelcome harassment or that the alleged harassment was in any way based upon her disability. Therefore, Plaintiff has failed to establish the second and third elements of a disabilities-based hostile work environment claim.

37.    Even if the Court were to assume *arguendo* that Plaintiff was harassed, to establish the fourth element of a disability-based hostile work environment claim she must show that the complained-of harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment. *Jones v. Flagship Int'l*, 793 F.2d 714, 720-721 (5th Cir. 1986). The Court looks at the following circumstances to determine whether the harassment was severe enough to alter conditions of Plaintiff's employment: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

-16-

utterance; and whether it unreasonably interferes with an employees work performance." *Harris*, 510 U.S. at 23. "A recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (U.S. 1998).

38.    Plaintiff claims to have been harassed and discriminated against because her suggestions were not implemented into clinic procedure or guidelines (Doc. 4 at p.7, ¶6), but this simply does not amount to harassment or a hostile work environment based on a disability. Conduct must be extreme to amount to a change in the terms and conditions of employment. *Faragher*, 524 U.S. at 788. Only conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace is barred. *DeAngelis V. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995). Dr. Stangle's alleged adverse actions did not amount to a change in the terms and conditions of Plaintiff's employment for they did little if nothing to bar Plaintiff's opportunity to succeed in the workplace. Accordingly, these actions cannot be considered evidence of a hostile work environment and Plaintiff has failed to establish the fourth element of her hostile work environment claim.

39.    Dr. Takao was not even aware of Plaintiff's disability until the teleconference of May 16, 2013, after termination of the Spectrum ICA. The government was never made aware of Plaintiff's disability. Because Plaintiff did not inform either Spectrum or Distinctive that she was disabled, or ask for accommodations for her disability until May 16, 2013, <u>after</u> the government's decision to terminate her employment had already been made, she cannot sustain a claim that they failed to

accommodate her. In addition, there is no evidence of Plaintiff being subjected to harassment based on her disability. Thus, Plaintiff has also failed to establish the fifth element of a disability-based hostile work environment claim.

### *Plaintiff Cannot Establish that Spectrum Breached any Contract.*

40.     Plaintiff alleges Spectrum's conduct amounts to a breach of contract. However, Plaintiff was not a party to any employment agreement with Spectrum at the time in question. Therefore Plaintiff's breach of contract claim should be dismissed.

### III.

### CONCLUSION

41.     Spectrum moves to dismiss Plaintiff's Rehabilitation Act and breach of contract claims. Plaintiff should not be permitted to proceed with her claims against Spectrum when she has failed to establish: (1) that Spectrum made the decision to terminate her at the time in question; (2) that she had a valid employment agreement with Spectrum at the time of her termination; or even (3) a *prima facie* case of discrimination. Spectrum's contract with the Plaintiff terminated on March 30, 2013. Any subsequent decision to terminate Plaintiff's employment was based on the government's dissatisfaction with her work performance. Plaintiff's termination had nothing to do with discrimination. For these reasons, the claims against Spectrum should be dismissed in their entirety.

**WHEREFORE, PREMISES CONSIDERED**, Defendant, Spectrum Healthcare Resources, Inc. respectfully requests that the Court consider its 12(b)(6) motion to dismiss with prejudice for failure to state a claim upon which relief may be granted; that Plaintiff herein take nothing whatsoever by way of this lawsuit against Spectrum; that any and all claims asserted by Plaintiff against Spectrum herein be dismissed with

1858163.5/SPH/32574/0101/103114

prejudice; and that Spectrum have and recover from and against Plaintiff its defense costs, including reasonable attorneys' fees. Defendant further requests such other and further relief, both general and special, both at law and in equity, to which it may be justly entitled under the circumstances herein.

In the alternative, Defendant, Spectrum Healthcare Resources, Inc. prays that this Court grant summary judgment on Plaintiff's claims against Spectrum and enter the attached Order dismissing those claims with prejudice and awarding Spectrum Healthcare Resources, Inc. its costs and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

By:  /s/ Katherine T. Garber
**Katherine T. Garber**
State Bar No. 07626985
S.D. Texas No. 10584
909 Fannin St., Suite 2300
Houston, Texas 77010
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
kathy.garber@strasburger.com

**ATTORNEYS-IN-CHARGE FOR DEFENDANT SPECTRUM HEALTHCARE RESOURCES, INC.**

OF COUNSEL:

**STRASBURGER & PRICE, LLP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 31st day of October, 2014, a true and correct copy of the foregoing document was served upon all counsel of record by first-class mail and/or via electronic notice from the Clerk of the Court as follows:

R. Chris Pittard
Forte & Pittard, P.L.L.C.
1777 NE Loop 410, Suite 600
San Antonio, Texas 78217

Michael D. McQueen
Kemp Smith LLP
P.O. Box 2800
El Paso, Texas 79999-2800

Paul W. Mengel III
Nichole L. DeVries
PilieroMazza PLLC
888 17th Street NW, 11th Floor
Washington, DC  20006


        /s/ Katherine T. Garber
**Katherine T. Garber**

1858163.5/SPH/32574/0101/103114