**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

_____
                                                          )
ROCHELLE FLYNN                          )
                                                          )
                    Plaintiff,                     )
                                                          )
v.                                                      )          Civil Action No. 5:13-cv-0936-FB
                                                          )
DISTINCTIVE HOME CARE, INC.,     )
d/b/a/ DISTINCTIVE HEALTHCARE    )
STAFFING, INC., et al.,                    )
                                                          )
                    Defendants.                  )
                                                          )
_____)

**DEFENDANT DISTINCTIVE HOME CARE, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Distinctive Home Care, Inc., d/b/a Distinctive Healthcare Staffing, Inc.

("Distinctive"), pursuant to Fed. R. Civ. P. 56, respectfully moves for summary judgment

against Plaintiff, Rochelle Flynn, ("Plaintiff") and in support submits as follows:

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.   On or about November 15, 2012, Plaintiff was retained as a contract pediatrician

with Defendant Spectrum Healthcare Resources, Inc. ("Spectrum") on a contract to

provide personnel to the San Antonio Texas Department of Defense Military Treatment

Facilities at Lackland Air Force Base.  See, Appendix 1, Spectrum Independent

Contractor Agreement.

2.   From the outset of Plaintiff's time providing services to Spectrum, Plaintiff

experienced difficulties with co-workers, specifically Dr. Jennifer Stangle, United States

Air Force ("USAF"). Dr. Stangle was the USAF clinic director on site. See, Am. Compl., pg. 6.  Plaintiff felt that Dr. Stangle unreasonably directed her to clean up her work area, did not take her suggestions seriously and did not provide enough time for Plaintiff to complete charts. See, Am. Compl., ¶ 6, p. 6-8.  Plaintiff did not tell Dr. Stangle that she had a disability. See, Appendix 2, Plaintiff's Response to Distinctive's Set of Interrogatories, No. 4.

3.  On March 27, 2013, Distinctive was awarded contract V797P-7300A (the "MTF Contract") to provide pediatricians at the San Antonio Texas Department of Defense Military Treatment Facilities at Lackland Air Force Base (the "Lackland Facilities") for the United States Government ("Government"), taking over the contract from Spectrum. See, Appendix 3, D. Guynn Decl. ¶ 3, Ex. A.

4.  As with Spectrum, Distinctive did not manage the day-to-day activities at the Lackland Facilities. Distinctive simply contracted with the Government to provide medical personnel whose work would then be directed by the Government.  See, Appendix 3, D. Guynn Decl. ¶ 5, Ex. A.

5.  Distinctive subcontracted the day-to-day personnel administration on the MTF Contract to Spectrum. See, Appendix 3, D. Guynn Decl. ¶ 6.

6.  On April 20, 2013, Distinctive contracted with Skwids and Skwiggles Pediatrics, PLLC, Plaintiff's business entity, to continue providing pediatric services at the Lackland Facilities ("IC Agreement").  The IC Agreement specifically provides that a Government request for Dr. Flynn's removal is a reason for immediate termination of the IC Agreement.  See, Appendix 3, D. Guynn Decl. ¶ 8, Ex. B.

7.  On or about May 15, 2013, Distinctive received a telephone call from David Warner, the contracting officer responsible for overseeing the MTF Contract on behalf of the Government.  Mr. Warner raised several concerns with Plaintiff's performance, including several complaints from patients and co-workers, Plaintiff's failure to report to work on time and her failure to timely complete patient charts.  Mr. Warner stated that it was in the best interest of the Government if Plaintiff was removed from providing services on the MTF Contract. See, Appendix 3, D. Guynn Decl. ¶ 9.

8.  On or about May 16, 2013, Distinctive asked Spectrum to contact Plaintiff regarding the Government's concerns. Dr. Richard Takao, a Spectrum employee, spoke with Plaintiff the same day.  During the conversation with Dr. Takao, Plaintiff stated that she had been diagnosed with Asperger's Syndrome, now known as Autism Spectrum Disorder ("ASD"), Level 1 mild, on May 15, 2013. See, Appendix 3, D. Guynn Decl. ¶ 10, and Am. Compl. ¶ 6, pg. 3.

9.  Prior to May 16, 2013, Plaintiff had not disclosed any medical condition to Distinctive. See, Appendix 3, D. Guynn Decl. ¶ 11.

10.  On or about May 30, 2013, Distinctive received an email and documentation from Mr. Warner substantiating the allegations of poor performance and patient complaints against Plaintiff. See, Appendix 3, D. Guynn Decl. ¶ 12, Ex. C. Distinctive also spoke with Mr. Warner and he, on behalf of the Government, directed that Plaintiff be removed from the MTF contract. See, Appendix 3, D. Guynn Decl. ¶ 12.

13.  Because the Government no longer would allow Plaintiff to work at the Lackland Facilities, she could no longer meet the requirements of the IC Agreement. As a

result, Distinctive instructed Spectrum to contact Plaintiff and advise her that the IC Agreement was being terminated effective immediately. <u>See</u>, Appendix 3, D. Guynn Decl. ¶ 13.

14.     On May 30, 2013, Dr. Takao called Plaintiff and advised her that the IC Agreement was terminated effective immediately and she was not to return to the worksite. <u>See</u>, Am. Compl., ¶ 6, pg. 4.

15.     On June 7, 2014, a conference call was held between Spectrum, Distinctive and Plaintiff to discuss concerns Plaintiff had regarding the termination of her services. Participating in the call were Plaintiff, James Guynn, Vice President of Distinctive, Bill Childress, Spectrum's Client Relations Manager, and Plaintiff's physician, Dr. Nancy Ratliff. During the call, Plaintiff asked Distinctive and Spectrum to ask the Government to reconsider its decision to remove her from the MTF Contract and suggested several possible accommodations to resolve issues that she believed were related to her diagnosis. <u>See</u>, Am. Compl., ¶ 6, pg. 5; Appendix 3, D. Guynn Decl. ¶ 15; Appendix 4, J. Guynn Decl. ¶ 9.

16.     During the June 7, 2014 conference call, Plaintiff highlighted that there are positive aspects of ASD that are assets to making her a "very good pediatrician." <u>See</u>, Am. Compl., ¶ 6, pg. 5.

17.     Following the June 7, 2014 conference call, Spectrum called and emailed the Government to discuss Plaintiff's requests to be reinstated with the accommodations she requested. <u>See</u>, Appendix 4, J. Guynn Decl. ¶ 10, Ex. A.

4

18.     On June 28, 2014, the Government sent Spectrum an email denying Plaintiff's requests. See, Appendix 4, J. Guynn Decl. ¶ 11, Ex. B.  Spectrum advised Plaintiff the same day that her request was denied by the Government. See, Am. Compl., ¶ 6, pg. 6, and Appendix 5, Plaintiff's Response to Distinctive's Request for Production of Documents, June 28, 2014 Email.

19.     Plaintiff experienced the symptoms of ASD prior to working with Distinctive and was formally diagnosed in the spring of 2013.  Plaintiff had been formally diagnosed with a chronic motor tick, attention deficit disorder, and obsessive compulsive disorder. See, Appendix 6, Plaintiff's Response to Distinctive's Request for Production of Documents, 18-A, B, C, and D.

20.     Plaintiff has successfully worked as a physician for several health care services since 2002. She worked at the Children's Hospital in Omaha, Nevada from July 2002 through March 2005 until the contract was not renewed. She worked at the Children's Hospital at the University of Oklahoma Medical Center from October, 2005 through December, 2005 when she voluntarily resigned. From July, 2006 through March, 2009, Plaintiff worked at Summerlin Hospital Medical Center in Las Vegas, Nevada. She resigned voluntarily because her family decided to move to Texas.  Plaintiff worked at Driscoll Children's Hospital in Corpus Christi, Texas, from September, 2009 through August, 2011 when she quit voluntarily. From October, 2011 through April, 2012, Plaintiff worked for the Aguirre Practice of Medicine in San Antonio, Texas.  She again resigned voluntarily.  Plaintiff then took a position at Christus Santa Rosa Children's Hospital in San Antonio, Texas from March, 2012 through September, 2012. She

resigned from her position voluntarily. <u>See</u>, Appendix 2, Plaintiff's Response to Distinctive's Request for Interrogatories, No. 10.

21.     While Plaintiff was providing services to Distinctive, she was also providing services on another government contract for Ingenesis Arora Staffing, LLC ("Arora"). Plaintiff successfully provided services to Arora at Fort Sam Houston from October, 2013 through September, 2014.  Arora's contract with the government at Fort Sam Houston was not renewed, and her contract was terminated accordingly. <u>See</u>, Appendix 2, Plaintiff's Response to Distinctive's Request for Interrogatories, No. 9.

## <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the pleadings, affidavits and discovery on file "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case; however, this burden does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.  Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795, 796 (2000); <u>Celotex</u>, 477 U.S. at 323. Unsubstantiated assertions of an actual dispute will not suffice. <u>Thomas v. Price</u>, 975 F.2d 231, 235 (5th Cir.1992) (citing <u>Celotex</u> at 323).

## ARGUMENT

This lawsuit arises out of Plaintiff's contract with Distinctive. In her Amended Complaint, Plaintiff alleges discrimination based on her disability pursuant to the Rehabilitation Act of 1973, and breach of contract. As set forth below, Distinctive is entitled to summary judgment on each of Plaintiff's claims as a matter of law.

## I.      The Undisputed Facts Preclude Plaintiff from Recovery under the Rehabilitation Act of 1973.

Plaintiff asserts that her claims are "instituted pursuant to 29 U.S.C. §794," otherwise known as Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"). Am. Compl. ¶ 1. To establish a claim of discrimination pursuant to the Rehabilitation Act, a plaintiff must first create, by way of evidence, a genuine issue of material fact that she is (1) an "individual with a disability"; (2) who is otherwise "qualified"; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) that she was discriminated against "solely by reason of her disability." 29 U.S.C. §794; Hileman v. City of Dall., 115 F.3d 352 (5th Cir.1997). If a defendant can then set forth a legitimate reason for taking an adverse action against the plaintiff, a plaintiff must then demonstrate through evidence a material issue of fact as to whether that reason is mere pretext for a discriminatory intent. Silva v. Chertoff, 512 F. Supp. 2d 792 (W.D. Tex. 2007). Here, Plaintiff has not provided any evidence that creates a genuine dispute that Distinctive violated the Rehabilitation Act when it terminated her services.

### A.      *Plaintiff was an Independent Contractor, not an Employee and, Therefore, is Not Entitled to Recovery*

Plaintiff cannot assert a claim under the Rehabilitation Act because she was an independent contractor and not an employee of Distinctive. It is undisputed that Plaintiff

did not have an employee-employer relationship with Distinctive and Plaintiff admits that she was an independent contractor.  Am. Compl. ¶ 3.  As she was not an employee of Distinctive, she cannot assert a Rehabilitation Act claim against Distinctive.[1]

> Section 504(d) of the Rehabilitation Act states that:
>
> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).  A plaintiff can only bring an Americans with Disabilities Act ("ADA") claim against an entity with which he or she had an employment relationship. See 42 U.S.C. §§ 12111(2) & 12112(a).

The Fifth Circuit applies a "hybrid" economic realities/common law test to determine if an employment relationship exists under employment discrimination statutes.[2]  Bloom v. Bexar Cnty., Tex., 130 F.3d 722, 725 (5th Cir. 1997).  The most important factor of the test is "the extent of the employer's right to control the 'means and manner' of the worker's performance.'"  Id.; see also St. John v. NCI Bldg. Sys.,

---

[1] The Fifth Circuit has not yet ruled whether the Rehabilitation Act extends coverage to independent contractors.  However, Distinctive urges that the precedent of the Sixth and Eighth Circuits is persuasive on this issue.  See Hiler v. Brown, 177 F.3d 542 (6th Cir. 1999); Wojewski v. Rapid City Regional Hosp., 450 F.3d 338 (8th Cir. 2006).

[2] The economic realities/common law test considers factors including (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.  Bloom, 130 F.3d at 726 n.3.

Inc., 537 F. Supp. 2d 848, 859 (S.D. Tex.) ("Given the substantial overlap in the analytical framework among the employment discrimination statutes, the court finds that the hybrid economic realities/common law control test applies in determining whether an employment relationship exists under the ADA.").  In sum, in the Fifth Circuit, a plaintiff cannot bring an ADA claim against someone who is not her employer.

The Eighth Circuit has applied this rule to the Rehabilitation Act and held that the coverage of the Rehabilitation Act does not extend to independent contractors.  Wojewski v. Rapid City Regional Hosp., 450 F.3d 338, 345 (8th Cir. 2006).  The Wojewski court reasoned that "the focus of the Rehabilitation Act is upon providing remedies for individuals who are *employees*."  Id. (emphasis added).  The court further noted that the Rehabilitation Act and Title I of the ADA are interchangeable in many respects and the "ADA requires an employee-employer relationship, and the Rehabilitation Act contemplates the same."  Id.

Likewise, the Sixth Circuit has held that "individuals who do not otherwise meet the statutory definition of "employer" cannot be held liable under the Rehabilitation Act's anti-retaliation provision."  Hiler v. Brown, 177 F.3d 542, 547 (6th Cir. 1999).  In Hiler, the Sixth Circuit held that an individual person, such as a supervisor, cannot be held personally liable for retaliation under the Rehabilitation Act.  Id.  This Court has adopted the framework of Hiler and held that:

> To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he engaged in a protected activity (e.g., the filing of an EEO complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity...."

Lopez-Baca v. Geren, 599 F. Supp. 2d 744, 755 (W.D. Tex. 2008); Ortega v. Chertoff, 600 F. Supp. 2d 828, 837 (W.D. Tex. 2008).[3]  These cases clearly show that a Rehabilitation Act claim can *only* be brought against a plaintiff's *employer*.

It is undisputed that Distinctive was never Plaintiff's employer and that Plaintiff admits she was merely an independent contractor of Distinctive.  See Am. Compl. ¶ 3. Plaintiff's company entered into an "Independent Contractor Agreement" with Distinctive where they agreed the relationship between them shall be that of independent contractor.  See Appendix 7, Distinctive Independent Contractor Agreement at 1.  They further agreed that Distinctive would not control the manner or means in which Plaintiff performed the services.  Id.  Further, Distinctive's contract with the Government provided that it was "intended to create an employer-employee relationship between the Government and the individual [health care provider] only to the extent necessary for providing the health care services required under the contract."  See Appendix 8, MTF Contract at 23.  Distinctive in fact did not manage the daily activities of Plaintiff and Plaintiff worked at the direction of the Government.  See Appendix 3, D. Gunn. Decl. ¶ 2. Thus, as it is clear that Plaintiff was an independent contractor and Distinctive was not her employer, and, thus, Plaintiff cannot bring a Rehabilitation Act claim against Distinctive.

    **B.**    ***Plaintiff is Not Disabled Within the Meaning of the Rehabilitation Act.***

In order to recover under the Rehabilitation Act, it is not enough to simply establish that a plaintiff has a disability.  Silva, 512 F. Supp. 2d at 794. Rather, in order to

---

[3] Although these cases applied the Hiler framework in the context of a retaliation claim under the Rehabilitation Act, the reasoning applies to all Rehabilitation Act claims. If a person who does not meet the definition of an employer cannot be held liable for retaliation under the Act, it follows that a person who does not meet the definition of an employer cannot be held liable for discrimination under the Act.

establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must show that the disability in question "substantially limits one or more of a person's major life activities." 29 U.S.C. § 706(8)(B); Hileman, 115 F.3d at 353. For a plaintiff to show that she is substantially limited in a major life activity, she must be impaired in her ability to be generally employed in a broad range of jobs, not merely for the position that she may wish to hold. Sutton v. United Airlines, 527 U.S. 471, 491, 119 S. Ct. 2139 (1999); Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010); Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir. 1992).  An impairment that limits a plaintiff's ability to engage in a narrow range of jobs or only a particular job does not establish that the condition "substantially limits" a major life activity. Hileman, 115 F.3d at 354. See also Elstner v. Southwester Bell Tel. Co., 659 F. Supp. 1328, 1343 (S.D. Tex. 1987), aff'd, 863 F.2d 881 (5th Cir. 1988). In order to determine if a condition impairs a plaintiff's ability to become generally employed, courts examine the number and types of jobs from which a plaintiff is disqualified, access to jobs based on any geographic restrictions and employment qualifications. Chandler v. City of Dall., Tex., 2 F.3d 1385, 1392 (5th Cir. 1993). The Fifth Circuit has declined to allow recovery for "those who are in fact capable of working substantially similar jobs." Hileman, 115 F.3d at 354.

Plaintiff has not established any evidence that she is substantially limited in a major life activity.  Although Plaintiff's Amended Complaint states that her ASD impairs her communications with others, as a matter of law, the "substantially limited" standard is only satisfied if the impairment "severely limits the fundamental ability to communicate with others." Logan v. Nicholson, 2006 WL 1492243, at *5 (S.D. Tex. 2006).  A plaintiff must be unable to initiate and respond to contact with others, or to

"respond to them at a most basic level." Id.  The standard would not be met by a plaintiff whose ability to communicate was not substantially limited but whose communication was inappropriate, ineffective, or unsuccessful. Id.

In this case, it is undisputed that Plaintiff has been diagnosed with ASD, level 1, mild.  Am. Compl. ¶ 6, p. 3. However, Plaintiff has failed to produce any evidence that she is *substantially limited* in her ability to be generally employable. Plaintiff exhibited the symptoms of ASD throughout her career as a physician. Despite these conditions, she successfully worked for numerous healthcare organizations as a treating physician for many years prior to providing services for Distinctive. See Appendix 2, Plaintiff's Response to Distinctive's Request for Interrogatories, No. 10. Additionally, Plaintiff was working with Arora part-time on another Government contract while she was providing services on the MTF Contract for Distinctive, and continued in that role until the contract came to its natural end in September, 2014. See Appendix 2, Plaintiff's Response to Distinctive's Request for Interrogatories, No. 9. The evidence clearly shows that ASD does not prevent Plaintiff from working and maintaining her employment and Plaintiff admits that ASD actually makes her a better treating physician in many respects. See Am. Compl. ¶ 6, pg. 5.

The undisputed facts establish that Plaintiff is able to obtain work and successfully maintain employment without accommodation. Moreover, Plaintiff has not established that any deficiencies in her ability to communicate with others are such that she cannot sustain a basic level of communication. Because Plaintiff has not provided any evidence that she is disabled as defined by the Rehabilitation Act, her claim fails as a matter of law.

C.    *There is No Evidence that Plaintiff's Diagnosis Was Distinctive's Sole Reason for the Termination of her Services.*

In order to satisfy the final prong of a *prima facie* case under the Rehabilitation Act, a plaintiff must show that she was discriminated against "solely by reason of her disability." Hileman, 115 F.3d at 354 (5th Cir. 1997). The causation standard under §504 is well established. It requires that a plaintiff's disability be the sole reason for the alleged adverse action. Soledad v. U.S. Dept. of Treasury, 304 F. 3d 500, 503 (5th Cir. 2002). Pinkerton v. Spellings, 529 F.3d. 513, 515 (5th Cir. 2008). Here, Plaintiff has failed to set forth any evidence that her ASD diagnosis was the sole reason for Distinctive's termination of her services.

In this case, the undisputed facts demonstrate that it was the Government's request for removal of Plaintiff's services which precipitated Distinctive to terminate her services, not Plaintiff's disclosure of the ASD diagnosis. It is undisputed that the Government requested Plaintiff's removal. See Appendix 3, D. Guynn Decl. ¶ 12. It is also undisputed that Distinctive had no knowledge of the ASD diagnosis until May 16, 2013, when Plaintiff disclosed the diagnosis to Spectrum. See Appendix 4, J. Guynn Decl. ¶ 6.  The Government had already advised Distinctive that it would be in the best interest of the Government if Plaintiff was removed from providing services for the Government at the time Distinctive learned of her diagnosis.  Distinctive terminated Plaintiff's services in accordance with the terms of the IC Agreement and the requirements of the MTF Contract, not because of her ASD diagnosis. See Appendix 3, D. Guynn Decl. ¶ 13.

**D.** **The Government's Request for Plaintiff's Removal from Providing Services was a Legitimate, Non-Discriminatory Reason for Her Termination.**

The foregoing demonstrates that Plaintiff has failed to establish a *prima facie* case of discrimination under the Rehabilitation Act.  However, even if Plaintiff could establish a *prima facie* case of discrimination, she has failed to set forth any evidence that Distinctive's legitimate reason for the termination of her services was mere pretext for a discriminatory motive. Silva, 512 F. Supp. 2d at 793.

It is undisputed that the Government requested Plaintiff's removal from the Lackland Facilities and the initial removal request pre-dated Plaintiff's disclosure of her disability.  See Appendix 3, D. Guynn Decl ¶ 9.  It is also undisputed that Distinctive had a contractual obligation to comply with the Government's request for removal and that the IC Agreement provided for the immediate termination of Plaintiff's services should the Government request her removal. See Appendix 3, D. Guynn Decl. ¶ 13, Ex. A and B.  Plaintiff has produced no evidence that Distinctive had any other purpose or motive in terminating her services other than the Government's request. The established facts in this case demonstrate that Plaintiff's services were terminated solely at the behest of the Government and Distinctive had no discretion to allow her to continue to work at a Government installation after the Government directed she be removed from service. Accordingly, Plaintiff's claim fails as a matter of law.

**E.** **Plaintiff Has Failed to Establish a Prima Facie Case of Failure to Accommodate.**

To the extent Plaintiff claims that Distinctive violated the Rehabilitation Act because it did not reconsider its decision to terminate her services and it did not provide accommodation for her ASD diagnosis, Plaintiff's claim again fails as a matter of law. To

14

establish a *prima facie* case under the Rehabilitation Act for failure to accommodate, a plaintiff must show that she is disabled and could perform the essential functions of the position with or without a reasonable accommodation.  Sapp v. Donohoe, 539 F. App'x 590, 595 (5th Cir. 2013).

As set forth above, Plaintiff has not produced evidence she is disabled as defined by the Rehabilitation Act.  However, even if she had, Plaintiff has not provided any evidence that Distinctive denied her accommodation request.  Id. See also Chandler, 115 F.3d 352, 355.  It is undisputed that following the termination of Plaintiff's services, Plaintiff, Spectrum and Distinctive participated in a conference call wherein Plaintiff requested the reinstatement of her services with proposed accommodations.  See Am. Compl. ¶ 6, pg.5.  However, it is also undisputed that Distinctive could neither reinstate Plaintiff nor grant the proposed accommodations without the approval of the Government.  See Appendix 4, J. Guynn Decl. ¶ 10, and Appendix 8, MTF Contract. Additionally, Distinctive, through Spectrum, did submit her reinstatement and proposed accommodation requests to the Government and it was the Government, not Distinctive, that denied Plaintiff's requests on June 28, 2014.  See Appendix 3, D. Guynn Decl. ¶ 16, Appendix 4, J. Guynn Decl. ¶ 11, and Appendix 5, Plaintiff's Response to Distinctive's Request for Production of Documents, June 28, 2014 Email.

Moreover, Plaintiff has not shown that the approval of her requested accommodation would have mitigated her performance issues.  Plaintiff has not demonstrated how any of the accommodations she requested on the June 7, 2013 conference call would have eliminated the hostile relationship she had with her military co-workers, her inability to timely complete her work or to resolve her tardiness issues.

<u>See</u> Appendix 9, May 17, 2013 Memo. Because Plaintiff has not set forth evidence that she was entitled to an accommodation or that her accommodation request was improperly denied by Distinctive, Plaintiff's claim fails as a matter of law.

## II.      Distinctive is Entitled to Judgment as a Matter of Law on Plaintiff's Breach of Contract Claim.

Plaintiff asserts a breach of contract claim against Distinctive but does not specify the manner in which Distinctive allegedly breached a contract to which Plaintiff is a party. Plaintiff asserts that "the contract did not provide a provision for terminating the services of Plaintiff under the terms her contract was terminated" and "the contract specified the method for communicating the termination, by certified mail, and Plaintiff's contract was not terminated in the specified manner." Am. Compl. ¶ 9. In Texas, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." <u>Smith Int'l, Inc. v. Egle Grp., LLC</u>, 490 F.3d 380, 387 (5th Cir. 2007). Given the foregoing elements, Plaintiff has not established a breach of contract claim against Distinctive.

As an initial matter, the contract at issue is between Distinctive and Skwids and Skwiggles Pediatrics, PLLC ("S&SP"). <u>See</u> Appendix 3, D. Guynn Decl. ¶ 8, and Appendix 7, Distinctive's Independent Contractor Agreement. Plaintiff brought this action individually in her name, and did not bring the action on behalf of S&SP. Thus, Plaintiff has failed to establish that she has standing to assert a breach of contract claim against Distinctive because she is not party to a contract with Distinctive. <u>See</u> <u>Barrera v. Cherer</u>, 2014 WL 1713522, at *2 (Tex. App. 2014) ("A member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to

the company."); <u>see also</u> <u>Wingate v. Hajdik</u>, 795 S.W.2d 717, 719 (Tex.1990) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.").

Even assuming, without conceding, that Plaintiff has standing to bring a breach of contract claim against Distinctive, she has failed to sufficiently present evidence of such a breach.  Under the Agreement, Distinctive had the right to immediately terminate the Agreement "upon giving written notice of termination to" S&SP in the event of a number of situations.  <u>See</u> Appendix 7, Distinctive's Independent Contractor Agreement at 2. The situations allowing immediate termination include a "request received by Company that Contractor or Physician be removed from the schedule or not provide Services hereunder at Facility."  <u>Id</u>.  On May 30, 2013, Distinctive received a request from the Government to remove Plaintiff from her position.  <u>See</u> Appendix 3 D. Guynn Decl, Ex. C, May 30, 2014 email from David Warner.  This request triggered Distinctive's right to immediately terminate its Agreement with S&SP.

Plaintiff asserts that Distinctive breached its Agreement by failing to communicate the termination by certified mail.  Under the Agreement, "Notice to be given by either party shall be given in writing by prepaid certified mail or prepaid express delivery to the other party."  <u>See</u> Appendix 7, Distinctive's Independent Contractor Agreement at 3.  Distinctive concedes that Plaintiff was not given notice of her termination by prepaid certified mail or prepaid express delivery.  However, Distinctive did not breach the Agreement because it substantially complied with the notice provision and provided Plaintiff effective and actual notice of termination.

A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform.  Myriad Dev., Inc. v. Alltech, Inc., 817 F. Supp. 2d 946, 963 (W.D. Tex. 2011).  However, even when a contract requires written notice to be sent by a specific method or to a specific location, notice is effective and in substantial compliance with the terms of the contract when notice is *actually received*. See Texas Util. Elec. Co. v. Aetna Cas. & Surety Co., 786 S.W.2d 792, 793-94 (Tex.App. 1990); Barbier v. Barry, 345 S.W.2d 557, 562 (Tex.App. 1961) (holding notice of cancellation was effective even when it was not sent by registered mail as required in contract).  In this case, Plaintiff had actual notice of her termination on May 30, 2013, and Distinctive substantially complied with the Agreement.  Am. Compl. ¶ 6, pg. 4.

Moreover, Plaintiff has failed to demonstrate damages she sustained from not receiving notice of termination by certified mail or express delivery.  Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed.  Mood v. Kronos Products, Inc., 245 S.W.3d 8, 12 (Tex. App. 2007).

In this case, receiving notice by certified mail or express delivery would not have changed Plaintiff's position in any way.  Distinctive was entitled to terminate its agreement with S&SP immediately upon receiving a request from the Government that Plaintiff be removed from her position.  The notice provision in this Agreement *does not* ensure Plaintiff's contract will continue for a certain period of time after notice is given. See, e.g., Cushman & Wakefield, Inc. v. Fletcher, 915 S.W.2d 538, 545 (Tex. App. 1995) ("When an employment contract requires a certain period of notice, the employment may

be canceled on shorter notice or upon none at all if the employee is paid wages or salary for the specified notice period.").

Plaintiff asserts she is entitled to damages in the amount of the payment she would have received had she performed the remainder of her contract.  Am. Compl. at 9; Appendix 2, Plaintiff's Response to Distinctive's Set of Interrogatories, No. 8.  However, inasmuch as Distinctive received a request from the Government to remove Plaintiff, Distinctive was entitled to terminate the Agreement.  See Appendix 2, Plaintiff's Response to Distinctive's Set of Interrogatories, No. 8; Appendix 3, D. Guynn Decl., Ex. C; Appendix 7, Distinctive's Independent Contractor Agreement at 2.  It is undisputed that Distinctive did terminate the Agreement and that Plaintiff had notice of the termination.  Am. Compl. ¶6, pg. 4; Appendix 4, J. Guynn Decl. ¶ 8.  Therefore, Plaintiff is not entitled to any damages because she is in the same economic position she would have enjoyed had she received notice by certified mail or express delivery. [4]  As it is clear from the undisputed facts that Plaintiff cannot assert a breach of contract claim against Distinctive, Distinctive is entitled to judgment as a matter of law.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Defendant Distinctive Home Care, Inc. respectfully requests that this Court grant its Motion for Summary Judgment, that it dismiss Plaintiff's Complaint in its entirety, with prejudice, and that it grant such other and further relief as appropriate.

---

[4] The Agreement provided that either party may terminate the Agreement without cause upon ninety days written notice to the other party.  Appendix 7, Distinctive's Independent Contractor Agreement at 2.  Even assuming Distinctive was not entitled to terminate the Agreement upon receiving a request that Plaintiff be removed, Plaintiff's damages would be, at most, her retainer fee for ninety days.  Id.; see also Cushman & Wakefield, 915 S.W.2d at 546 (when contract required a two-week notification before termination, employee's damages were two weeks' salary from the day he received notice).

Date: October 31, 2014                                    Respectfully submitted,


                                                          _/s/ *Michael D. McQueen*_____
                                                          Michael D. McQueen
                                                          State Bar No. 13849700
                                                          KEMP SMITH LLP
                                                          P.O. Box 2800
                                                          El Paso, Texas 79999-2800
                                                          Mmcqueen@kempsmith.com


## CERTIFICATE OF SERVICE

I certify that on this 31st day of October, 2014, the foregoing was served, by

submission of the document to the U.S. District Court through the Court's ECF system to

all parties indicated on the electronic filing receipt.  Parties may access this filing through

the Court's electronic filing system.


                                                          _/s/ *Michael D. McQueen*_____
                                                          Michael D. McQueen