IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROCHELLE FLYNN, § § Plaintiff, § § v. § § 5:13-CV-0936-RP § DISTINCTIVE HOME CARE, INC. d/b/a § DISTINCTIVE HEATHCARE STAFFING, § INC.; AND SPECTRUM HEATHCARE § RESOURCES, INC. § § Defendants. § | |

**OPINION AND ORDER**

Before the Court are dispositive motions from both Defendants in the above-styled case. Specifically, the Court now considers Defendant Spectrum Healthcare Resources, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and in the Alternative, Motion for Summary Judgment filed October 31, 2014 (Dkt. #22); Plaintiff Rochelle Flynn's Response to Spectrum's Motion filed November 19, 2014 (Dkt. #27); Spectrum's Reply filed November 26, 2014 (Dkt. #29); Defendant Distinctive Home Care, Inc.'s Motion for Summary Judgment filed October 31, 2014 (Dkt. #23); Plaintiff's Response to Distinctive's Motion filed November 19, 2014 (Dkt. #26); and Distinctive's Reply filed December 3, 2014 (Dkt. #30). After reviewing the pleadings, relevant case law, and the entire case file, the Court issues the following Opinion and Order.

**I. BACKGROUND**

This case is brought by Plaintiff Rochelle Flynn for employment discrimination under the Rehabilitation Act and for state law breach of contract against Defendants Distinctive Home Care, Inc. ("Distinctive") and Spectrum Healthcare Resources, Inc. ("Spectrum"). Dr. Flynn is a pediatrician who was recently diagnosed with Autism Spectrum Disorder, Level 1 mild ("ASD"), a condition once referred to as Asperger's Syndrome. (Resp. to Distinctive, Ex. 4, at 3). Shortly after disclosing her condition to Defendants, Dr. Flynn's Independent Contractor Agreement was

1

terminated.  (Distinctive's Mot. Summ. J., App'x 3, at 4-5; Resp. to Spectrum, Ex. 1, at 28).  The present lawsuit arises out of this termination.

In the summer of 2012, Dr. Flynn was hired by Spectrum as an independent contractor pediatrician at Wilford Hall Medical Center located at Joint Base San Antonio Lackland Air Force Base ("Lackland Facilities").  (Spectrum's Mot. Summ. J., App'x, at 1-7).  Dr. Flynn subsequently assigned all of her rights under the contract to Skwids and Skwiggles Pediatrics, PLLC, ("Skwids and Skwiggles") a limited liability company managed by Dr. Flynn.  (Spectrum's Mot. Summ. J. App'x, at 8).  Several months later, Spectrum's contract to provide pediatricians at the Lackland Facilities came to an end, and the government awarded Distinctive a new contract to provide pediatricians at the Lackland Facilities.  (Distinctive's Mot. Summ. J., App'x 3, Ex. A). Distinctive then subcontracted the day-to-day personnel administration at the Lackland Facilities to Spectrum.  (Distinctive's Mot. Summ. J., App'x 3 ¶ 6).  On April 20, 2013, Skwids and Skwiggles signed a new Independent Contractor Agreement with Distinctive for Dr. Flynn's services.  (Distinctive's Mot. Summ. J., App'x 3, Ex. B).

Dr. Flynn was first diagnosed with ASD on May 15, 2013.  (Resp. to Distinctive, Ex. 4, at 3).  The following day, Dr. Richard Takao, a medical director for Spectrum who helped manage Distinctive's contract pediatricians, called Dr. Flynn to inform her that there had been some complaints about her job performance and interactions with patients and coworkers.  (Am. Compl., at 3).  During the call, Dr. Flynn informed Dr. Takao of her diagnosis.  *Id.*  Dr. Flynn claims that Dr. Takao responded by saying that this "completely changed" his "perspective," and that it was "no longer cut and dried" and that he would "have to discuss it further" with Distinctive.  *Id.* at 3-4.

On May 30, 2013, Distinctive received an email about Dr. Flynn from David Warner, the person responsible for overseeing the government's contract with Distinctive.  (Distinctive's Mot. Summ. J., at 3).  The email and its attachments discussed Dr. Flynn's poor performance and asked Distinctive to remove Dr. Flynn as a contract pediatrician at the Lackland Facilities.  *Id.*

That night, Dr. Takao informed Dr. Flynn that her contract with Distinctive "was to be terminated." (Am. Compl., at 4). Throughout the next month Dr. Flynn attempted to communicate with Distinctive and Spectrum to show that through inexpensive reasonable accommodations she could improve her efficiency and social interactions, and that with these minor changes she would be fully able to fulfill her duties as a contract pediatrician. *Id.* at 5-6. Distinctive, however, refused to reverse their initial decision, and on June 28, 2013, Dr. Flynn was told that the government would not agree to any "modifications" and that her contract was effectively terminated. *Id.* at 5.

In addition, Dr. Flynn contends that during her tenure as a contract pediatrician, she had been "singled out by harassing and demeaning comments and actions made by clinic director Dr. Jennifer Strangle." *Id.* at 6. For example, at a lunchtime meeting Dr. Strangle curtly dismissed one of Dr. Flynn's suggestions about how to gather information on family medical history. *Id.* at 6-7. Dr. Flynn contends that this type of harassment "created a very hostile work place" for her. *Id.* at 6.

On January 9, 2014, Dr. Flynn sued Distinctive and Spectrum alleging various violations of the Rehabilitation Act of 1973 and state law breach of contract claims. Defendants filed the present motions for summary judgment on October 31, 2014.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

### III. ANALYSIS

Plaintiff brings claims under two legal theories: (1) that Defendants violated her rights under the Rehabilitation Act of 1973 by terminating her contract after finding out that she had been diagnosed with ASD, failing to provide continued employment with reasonable accommodations, and creating a hostile work environment due to her disability; and (2) that Defendants breached the Independent Contractor Agreement by terminating the Agreement and by failing to send notice of the termination by certified mail or express delivery. (Am. Compl., at 5-6, 8). The Court addresses each of these claims in turn.

**A.     Rehabilitation Act Claims**

Dr. Flynn asserts that "Defendants Distinctive and Spectrum violated the Rehabilitation Act of 1973 when they terminated her contract after they found out she had been diagnosed with Asperger's Syndrome." *Id.* at 8.  The Rehabilitation Act of 1973 "establishes a comprehensive federal program aimed at improving the lot of the handicapped." *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 626 (1984). Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides a private right of action for individuals subjected to disability

discrimination—including employment discrimination—by any program that receives monetary assistance from the federal government.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Specifically, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Defendants argue that Dr. Flynn lacks standing to bring claims under the Rehabilitation Act because she was an independent contractor, not an employee.  (Distinctive's Mot. Summ. J., at 7-10; Spectrum's Reply, at 1-3).  Plaintiff, on the other hand, argues that unlike other employment discrimination statutes, an employer-employee relationship is not a prerequisite for coverage under the Rehabilitation Act.  (Resp. to Distinctive, at 8).

The Fifth Circuit has yet to directly address this issue, and other federal circuit courts are split.  The disagreement turns on whether the Rehabilitation Act adopts all or only part of Title I of the Americans with Disabilities Act ("ADA").  Section 504 of the Rehabilitation Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act . . . as such sections relate to employment."  29 U.S.C. § 794(d).  If the Rehabilitation Act adopts Title I of the ADA wholesale, then it would have the same coverage limitations as the ADA—specifically, there would need to be an employer-employee relationship.  If the Rehabilitation Act only selectively incorporates Title I, however, then independent contractors would likely be covered.

Two Circuits—the Sixth and Eighth—have decided that the Rehabilitation Act adopts Title I of the ADA in full.  *Wojewski v. Rapid City Reg'l Hosp.*, 450 F.3d 338 (8th Cir. 2006); *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999).  In *Wojewski*, the Eighth Circuit specifically addressed whether independent contractors are covered under the Rehabilitation Act.  *Wojewski*, 450 F.3d at 344.  In a brief discussion, the court noted "the similarity between Title I and the Rehabilitation Act," and "absent authority to the contrary," chose to "construe both to apply to an

employee-employer relationship" and "decline [the] appellant's invitation to extend coverage of the Rehabilitation Act to independent contractors." *Id.* at 345.[1]  The Sixth Circuit has also concluded, albeit indirectly, that the limitations found in Title I of the ADA apply to the Rehabilitation Act.  *Hiler*, 177 F.3d at 547.  At issue in *Hiler* was whether the Rehabilitation Act created a private cause of action for retaliation against an employee's supervisors in their individual capacities.  *Id.* at 543.  Deciding in the negative, the court determined that "[t]he ADA, ADEA, and Rehabilitation Act borrowed the definition of 'employer' from Title VII", and thus "individuals who do not meet the [Title VII] statutory definition of 'employer' cannot be held liable under the Rehabilitation Act." *Id.* at 545 n.5, 547.

Conversely, the Ninth and Tenth Circuits have concluded that Title I of the ADA is only selectively incorporated into the Rehabilitation Act.  *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938 (9th Cir. 2009); *Schrader v. Ray*, 296 F.3d 968 (10th Cir. 2002).  In *Schrader*, the Tenth Circuit considered whether the Rehabilitation Act incorporated the ADA's definition of employer requiring "fifteen or more employees" as a limitation on the entities covered by the Rehabilitation Act.  *Schrader*, 296 F.3d at 971.  The *Schrader* court relied on the analysis in *Johnson v. N.Y. Hosp.*, 897 F. Supp. 83, 86 (S.D.N.Y. 1995):

> In enacting the 1992 amendment of the Rehabilitation Act, Congress intended that the standard of "reasonable accommodations" that employers must make under the ADA would serve as the standard in actions alleging Rehabilitation Act violations in the employer-employee context. . . . The language of the amendment states that the ADA's standards are to be used only "to determine whether [the Rehabilitation Act] has been violated."  29 U.S.C. § 749(d). . . . What the amendment does not state is that the standards of the ADA are to be used to determine

---

[1] The Ninth Circuit criticized this analysis because it found that Title I of the ADA and § 504 of the Rehabilitation Act are "quite different."  *Fleming v. Yuma Regional Medical Center*, 587 F.3d 938, 945 (9th Cir. 2009).  Most importantly, "[s]ection 504 does not even mention employment, while Title I deals exclusively with employment."  *Id.*  Therefore, the Ninth Circuit concluded that "there is no need to 'extend' the Rehabilitation Act; its language is broad enough to cover employees and independent contractors alike."  *Id.* (quoting *Wojewski*, 450 F.3d at 345).

> whether an employer is even subject to the Rehabilitation Act in the first instance.

*Schrader*, 296 F.3d at 972 (quoting *Johnson*, 897 F. Supp. at 86). The court concluded that "§ 504(d) addresses only the substantive standards for determining *what* conduct violates the Rehabilitation Act, not the definition of *who* is covered under the Rehabilitation Act." *Id.* (emphasis in original).

Likewise, in *Fleming*—the most recent circuit court decision to address the issue—the Ninth Circuit held that independent contractors were covered under the Rehabilitation Act because Title I is only selectively incorporated. *Fleming,* 587 F.3d at 946. The Ninth Circuit reached this conclusion for four reasons. First, the scope of the Rehabilitation Act is broader than the ADA. *Id.* at 941-42. Second, Congress did not use language of incorporation when it referred to the ADA in § 504. *Id.* at 942-43. Third, "jot-for-jot incorporation would substantially narrow the scope of the Rehabilitation Act." *Id.* at 943-45. And fourth, complete incorporation of Title I would result in "substantial duplication between the Rehabilitation Act and the ADA—perhaps inconsistent duplication—in the definitions of key terms." *Id.* at 945.

The Fifth Circuit has never directly addressed whether an independent contractor is covered under the Rehabilitation Act. It has, however, found that an employer-employee relationship is a prerequisite in civil rights employment discrimination suits. *Luna v. Roche*, 89 F. App'x 878, 881 (5th Cir. 2004). In *Luna*, a retired Air Force veteran brought suit against the Secretary of the Air Force alleging that the Air Force discriminated against him when it terminated his disability retirement benefits. *Id.* at 880-81. The plaintiff brought claims under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Equal Pay Act, and the Rehabilitation Act. *Id.* at 881. The Fifth Circuit found that "[t]he employment discrimination claims raised by [the plaintiff] require[d] the existence of an employer-employee relationship," and therefore the plaintiff lacked standing to pursue his claims because he was not an employee at the time his benefits were terminated. *Id.* The court, however, made this

assertion without any discussion of the Rehabilitation Act itself or the Title I issue that animates the circuit split described above.

But even though the Fifth Circuit has yet to consider the specific issue raised here, this Court is guided by the Fifth Circuit's holding that "employment discrimination claims" under the Rehabilitation Act "require the existence of an employer-employee relationship." *Id.*; *Tubre v. Clark McCarthy Healthcare Partners*, No. 14-1149, 2014 WL 6469414, at *2 (E.D. La. Nov. 17, 2014) ("Although the decision in *Luna* is at odds with the Ninth Circuit's holding in *Fleming*, which extends the Rehabilitation Act's protection to independent contractors, this Court is guided by the Fifth Circuit."). Perhaps the Fifth Circuit would reach a different conclusion if presented with the specific questions raised in the present litigation, but that is not for this Court to decide. Rather, it is this Court's duty to apply the Fifth Circuit's law as it stands today, and thus Dr. Flynn, as an independent contractor, does not have standing to sue Defendants under the Rehabilitation Act. Accordingly Defendants' Motions for Summary Judgment are granted insofar as they pertain to Plaintiff's claims under the Rehabilitation Act of 1973.[2]

## B.     Breach of Contract

In addition to her civil rights claims, Plaintiff asserts that Defendants' conduct amount to a breach of contract. (Am. Compl., at 8). Dr. Flynn alleges that Defendants breached their contract with her in two ways: (1) they did not have the right to terminate her contract in the first place and (2) they did not use the proper channels to notify her of her termination. *Id.* at 8-9.

First, Defendants argue that Plaintiff lacks standing to sue as an individual for a contract that was executed by the limited liability company that she manages. Plaintiff was not a party to

---

[2] Plaintiff does not specifically name the federal statute under which she is seeking relief for her reasonable accommodation and hostile work environment claims. Both the Amended Complaint and Plaintiff's responses to Defendants' summary judgment motions indicate that Plaintiff brings these claims under the Rehabilitation Act, not the ADA. (Am. Compl., at 1; Resp. to Spectrum, at 7-11; Resp. to Distinctive, at 9-13). But either way, the result is the same: Plaintiff lacks standing because she was an independent contractor, not an employee. 42 U.S.C. §§ 12111(4), 12112(a); *see also Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004) (recognizing that the ADA protects employees but not independent contractors).

the Independent Contractor Agreement at issue here.  Rather, at the time of the alleged breach, the only contract in effect was between Distinctive and Skwids and Skwiggles.  (Distinctive's Mot. Summ. J., App'x 3, Ex. B).  The general rule in Texas is that "[a] member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company."  *Berrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio Apr. 30, 2014, no pet.); *see also L & F Homes & Dev. L.L.C. v. City of Gulfport*, 538 F. App'x 395, 408 (5th Cir. 2013) (finding that the sole shareholder of limited liability company lacked standing to assert claims in his own name for injuries sustained by the company)*; Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (holding that a member of a limited liability company lacked standing to assert claim in his personal capacity for tortious interference with contract when the contract was entered into by the company); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250 (Tex. App.—Dallas 2005, no pet.) ("An individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity.") (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)).  Plaintiff has failed to meet her burden of providing any argument or evidence for why this general principle should not apply here.  Defendants are therefore entitled to summary judgment on Plaintiff's contract claims because Plaintiff lacks standing to sue under the Independent Contractor Agreement.

But even if Plaintiff did have standing to sue both Distinctive and Spectrum, her state law breach of contract claims would fail.  First, Distinctive had authority to terminate its contract with Skwids and Skwiggles. The Independent Contractor Agreement provides that "[n]otwithstanding anything to the contrary, [Distinctive] may immediately terminate this Agreement upon giving written notice of termination to Contractor" if Distinctive received a request "that Contractor or Physician be removed from the schedule or not provide Services hereunder at Facility." (Distinctive's Mot. Summ. J., App'x 7, at 2).  On May 30, 2013, Distinctive received an email

from the government requesting Dr. Flynn's removal.  (Distinctive's Mot. Summ. J., App'x 3, Ex. C, at 1).  A memorandum attached to the email stated:

> Currently Dr. Flynn . . . is not meeting the needs of the contract. Her personal interactions with both the patients and the staff have created a negative work environment and she is having significant difficulties meeting the demands of being a [primary care manager].  It would be in the best interest of the clinic if this position was filled by another provider . . . .

*Id.* at 3.  This email triggered Distinctive's right to immediately terminate its contract with Skwids and Skwiggles, and Dr. Takao informed Dr. Flynn that her contract was terminated soon thereafter.  (Resp. to Spectrum, Ex. 1, at 18, 28; Distinctive's Mot. Summ. J., App'x 3, at 4-5).

Second, even though Distinctive concedes that it failed to communicate Dr. Flynn's termination by certified mail, Distinctive did not breach the contract because the notice they provided substantially complied with the notice provision in the Independent Contractor Agreement.  The Agreement provides that "[n]otice to be given by either party hereunder shall be given in writing by prepaid certified mail or prepaid express delivery to the other party."  (Distinctive's Mot. Summ. J., App'x 7, at 3).  Distinctive failed to do this.  Instead, on Distinctive's orders, Dr. Takao—a Spectrum employee who managed Distinctive's contract pediatricians at the Lackland Facility—called Dr. Flynn and informed her that her contract was terminated.  (Resp. to Spectrum, Ex. 1, at 18, 28; Distinctive's Mot. Summ. J., App'x 3, at 4-5).

The doctrine of substantial compliance is well established under Texas law.  *See Barbier v. Barry*, 345 S.W.2d 557, 562 (Tex. Civ. App.—Dallas 1961, no writ) (holding that notice that failed to adhere to the technical requirements of the contract substantially complied with the contract and was thus effective); *see also Texas Utils. Elec. Co. v. Aetna Cas. & Sur. Co.*, 786 S.W.2d 792, 794 (Tex. App.—Dallas 1990, writ denied) (rejecting argument that the notice provision in a bond must be strictly complied with).  This doctrine "excuses a party's deviations from a contractual requirement, but only if those deviations do not severely impair the purpose of the requirement."  *South Texas Elec. Co-op v. Dresser-Rand Co.*, 575 F.3d 504, 508 (5th Cir.

2009) (applying Texas law). Here, summary judgment evidence establishes that Dr. Flynn received actual notice of the termination on May 30, 2013, (Resp. to Spectrum, Ex. 1, at 28), and Dr. Flynn has provided no evidence to either rebut that she received actual notice or explain how this form of notice "severely impair[ed] the purpose" of the Agreement's notice requirement. *Id.*; *cf. Redland Ins. Co. v. Sw. Stainless, L.P.,* 181 S.W.3d 509, 512 (Tex. App.—Fort Worth 2005, no pet.) (holding that because surety received actual notice, subcontractor's need to comport with statutory requirement that notice be sent certified mail was negated). Indeed, Dr. Flynn did not even mention her contract claims in her responses to Defendants' dispositive motions other than to state that "[t]he termination of the contract in the manner in which it was done also constituted a breach of the Plaintiff's contract." (Resp. to Spectrum, at 15; Resp. to Distinctive, at 14). Therefore the Court concludes the notice provided by Distinctive substantially complied with the notice requirement set forth in the Independent Contractor Agreement.

Dr. Flynn, individually, lacks standing to bring breach of contract claims that arise from a contract executed by the limited liability company that she manages. Moreover, Dr. Flynn has failed to create a genuine issue of material fact regarding whether or not Defendants breached the Independent Contractor Agreement between Distinctive and Skwids and Skwiggles. Accordingly Defendants' motions for summary judgment should be granted insofar as they pertain to Plaintiff's contract claims.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff Rochelle Flynn, as an independent contractor, does not have standing to bring claims under the Rehabilitation Act. Moreover Plaintiff both lacks standing to sue under the Independent Contractor Agreement and has failed to create a genuine issue of material fact regarding whether Defendants breached the contract by terminating Plaintiff's position or by failing to notify Plaintiff of the termination by certified mail or express delivery. Accordingly,

**IT IS ORDERED** that Defendant Spectrum Healthcare Resources, Inc.'s Motion for Summary Judgment (Dkt. #22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Distinctive Home Care, Inc.'s Motion for Summary Judgment (Dkt. #23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Spectrum Healthcare Resources, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #22) is **DISMISSED** as moot.

Signed March 5, 2015.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE